IN RE INTEREST OF MICHAEL B., JR., ET AL.
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE, V.
MICHAEL B., APPELLANT, AND PATRICIA B., APPELLEE AND
CROSS-APPELLANT.
594 N.W. 2d 674

Filed May 18, 1999.   No. A-98-516.

Stephen A. Scherr, of Whelan & Scherr, for appellant.

Brenda L. McCrady for appellee Patricia B.

S. Colin Palm, Deputy Adams County Attorney, for appellee State.

MUES, INBODY, and CARLSON, Judges.

MUES, Judge.

## I. INTRODUCTION

Michael B. appeals the judgment of the county court for Adams County, sitting as a juvenile court, terminating his parental rights. On appeal, Michael alleges that the trial court erred in admitting irrelevant evidence and that the order terminating his parental rights was not supported by clear and convincing evidence. Patricia B. cross-appeals, alleging that the trial court's order terminating her parental rights was not supported by clear and convincing evidence. Because there is clear and convincing evidence supporting the trial court's decision to terminate the parental rights of Michael and Patricia, we affirm.

## II. FACTUAL BACKGROUND

Michael and Patricia met and began living together in 1988. They are the natural parents of Michael B., Jr., born May 29,

1990; James B., born June 23, 1991; and Jeremiah B., born May 7, 1993. Patricia also has a daughter from a former marriage, born August 18, 1979. Prior to the adjudication of the three boys, Michael was convicted of sexually assaulting Patricia's daughter when she was only 13 years old. Thus, during the majority of the proceedings, from May 12, 1995, to October 23, 1997, Michael was incarcerated for sexual assault of a child. Michael and Patricia were married approximately 10 months after he was incarcerated, and the day after the boys were placed in the State's custody.

The record in this case is lengthy and replete with evidence regarding the abuse and neglect of the minor children and the extensive use of drugs and alcohol by Michael and Patricia, as well as their completely immoral and lewd behaviors. To the extent necessary, the specific facts and circumstances involved in this case will be discussed below. However, we conclude that a detailed recitation of facts is uncalled for due to the nature of this case and the extensive opinion written by the county court, which is complete with both fact and law. Suffice it to say that there is clear and convincing evidence to support the findings of the county court.

### III. PROCEDURAL BACKGROUND

On March 8, 1996, the State filed a petition requesting that the children be adjudicated as juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993), and temporary care and custody of the children was placed with the then Nebraska Department of Social Services (DSS). On July 24, an amended petition was filed which alleged (1) that the children were homeless or destitute or without proper support through no fault of their parents; (2) that they lacked proper parental care by reason of the fault or habits of their parents; or (3) that their parents neglected or refused to provide proper or necessary subsistence or other care necessary for the health, morals, or well being of the juveniles. Specifically, the petition alleged, inter alia, that Patricia had hit the children in the head and facial area with her knuckles; that an investigation revealed that the children had numerous abrasions and bruises on their heads and faces; that Michael, Jr., reported that his brothers got spanked

with wooden spoons; and that there had been minimal compliance with the voluntary services offered by DSS over the past 5 years.

Although Michael was given notice, he did not participate in the adjudication. Patricia admitted or pled no contest to the allegations contained in the petition, and the children were adjudicated on September 18, 1996. Subsequently, at least two case plans were adopted, and DSS worked extensively with Patricia in regard to the goals of those case plans.

On December 8, 1997, the State filed a petition seeking termination of Michael's and Patricia's parental rights pursuant to Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Cum. Supp. 1996). It also alleged that such termination was in the best interests of the children. Following an extensive hearing, the court found that Michael and Patricia had substantially and continuously or repeatedly neglected their children and had refused to give them the necessary parental care and protection. See § 43-292(2). It found that Michael and Patricia were unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct was seriously detrimental to the health, morals, or well-being of the children. See § 43-292(4). The court also found that the children were adjudicated as juveniles within the meaning of § 43-247 and that Patricia's reasonable efforts had failed to correct the conditions leading to the adjudication. See § 43-292(6). Finally, it found that the children had been in out-of-home placement for 18 or more consecutive months and that Patricia had failed to correct the conditions leading to the children's out-of-home placement in spite of reasonable efforts and services to the parents. See § 43-292(7).

The court found that Michael, Jr., had oppositional/defiant disorder and attention deficit hyperactivity disorder, and had exhibited sexualized behavior. It found that James had been diagnosed with attention deficit hyperactivity disorder, major depression, and posttraumatic stress disorder, and that he was on medications for seizure disorders, had been hospitalized on several occasions due to disruptive behavior problems, had exhibited significant sexualized behavior, and had numerous scars reflective of abuse with no perpetrator being proved. It

found that Jeremiah was diagnosed with possible attention deficit hyperactivity disorder and developmental speech disorder, that he showed signs of disruptive behavior and had exhibited sexualized behavior, and that he had numerous scars on his body caused from physical abuse with no evidence of a perpetrator. The court further found that all three children exhibited extensive learned use of vulgar and sexualized language, had special needs requiring strict and consistent limits, and required parents who could provide a stable, safe, and moral environment and a commitment of time to devote to the children's special needs.

In regard to Patricia, the court found that physical abuse has occurred by the discipline she exercised. It found that she did not demonstrate an ability to parent and handle her children's behaviors without external intervention and did not comply with the case plans adopted by the court. However, it found that Patricia's mental deficiency hindered her ability to follow and complete the court's case plan. It also found that her mental deficiency prevented her from profiting from services offered by DSS. '

The court also found that Patricia had seriously perverted her children's well-being because of her extreme indulgence of sensual pleasures; had exhibited indecent, base, and unprincipled behavior in the presence of her children; had excited her children's lustful desires by personal example and allowing lustful movies and periodicals to be freely accessible by her children. It found that her history of personal abuse and mental deficiency is the proximate cause of her present attitudes, beliefs, and lifestyle.

The court found that Patricia used alcohol and drugs while she had her children and after they were removed, that she associated with persons who are alcohol dependent and with persons who have been involved with abusive relationships with children, and that she also allowed her daughter to use alcohol and drugs.

It further found that Patricia failed to place herself in a position to resume the care and custody of her children and would not be able to do so within a reasonable time because of her mental deficiency; that she substantially and repeatedly failed

to provide a safe, clean, and moral environment for her children because of her mental deficiency and does not have the capacity to provide proper care, structure, nurturing, and protection for her children; and that she was not able to provide a clean home for her children without external support.

In regard to Michael, the court found that no case plan provided any conditions for reunification with Michael; that he had completed parenting classes; that he has seriously perverted his children's moral well-being because of his extreme indulgence of sensual pleasures; that he exhibited indecent, base, and unprincipled behavior in the presence of his children; that he has excited his children's lustful desires by personal example and allowing lustful movies and periodicals to be freely accessible by his children; that he has committed continuous sexual abuse and rape on Patricia's daughter while his children were under his care, custody, and control; that he continues to exhibit a desire to further pervert Patricia's daughter by sexual abuse; that the rape and abuse of Patricia's daughter began when she was 9 years old and continued while she was present in his home; and that he was convicted of sexually assaulting Patricia's daughter.

The court found that it was in the children's best interests to have Michael's and Patricia's parental rights terminated.

## IV. ASSIGNMENTS OF ERROR

Michael alleges that the trial court erred in (1) failing to sustain objections and motions to strike irrelevant evidence, (2) making findings of fact not supported by the evidence, (3) failing to dismiss the petition on account of failure to prove by clear and convincing evidence that his parental rights should be terminated, and (4) failing to dismiss the petition on account of failure to prove by clear and convincing evidence that he did not follow the requirements of a court-appointed case plan.

On cross-appeal, Patricia alleges that the trial court erred in (1) making findings of fact not supported by the evidence, (2) terminating her parental rights when such decision was not supported by clear and convincing evidence, and (3) ordering that the termination of her parental rights was based upon a finding that she was unable to discharge parental responsibilities

because of mental deficiency and a finding that there was a reasonable ground to believe such condition would continue for a prolonged indeterminate period of time, yet the State had failed to allege such ground for termination and to appoint a guardian ad litem for her.

## V. STANDARD OF REVIEW

■ Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997).

## VI. DISCUSSION

Section 43-292(2), (4), (6), and (7) provides in pertinent part that the court may terminate parental rights when the court finds such action to be in the best interests of the juvenile and one or more of the following conditions exist: The parent has substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling necessary parental care, been unfit by reason of debauchery or habitual use of intoxicating liquor or narcotic drugs, failed to correct the conditions leading to the determination that the child is one as described in § 43-247(3)(a), or failed to correct the conditions leading to the out-of-home placement in spite of reasonable efforts and services and the juvenile has been in out-of-home placement for 18 or more consecutive months.

■ Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting such and that such is in the juvenile's best interests. *In re Interest of Tabatha R., supra.* The grounds for terminating parental rights must be established by clear and convincing evidence, which is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

## 1. MICHAEL'S APPEAL

### (a) Evidence of Sexual Assault

Michael argues that the trial court improperly admitted evidence regarding an incident of sexual contact between himself and Patricia's daughter. He alleges that the incident was remote in time and place from the termination of his parental rights. The State, relying on *In re Interest of W.C.O.*, 220 Neb. 417, 370 N.W.2d 151 (1985), argues that evidence of Michael's sexual assault of Patricia's daughter, for which he was convicted, is relevant in juvenile proceedings. We agree.

In *In re Interest of W.C.O., supra*, the court allowed evidence that the father had sexually assaulted one minor child to be used as a ground for adjudicating his own child under § 43-247(3)(a). See, also, *In re Interest of Tabitha J.*, 5 Neb. App. 609, 561 N.W.2d 252 (1997) (sexual abuse considered in termination of parental rights); *In re Interest of Goodon*, 208 Neb. 256, 303 N.W.2d 278 (1981) (upholding termination of parents' rights where father had sexually molested some of his daughters). The county court properly considered evidence of Michael's sexual assault of Patricia's daughter.

### (b) Sufficiency of Evidence: Neglect and Lewd Conduct

The county court terminated Michael's parental rights under § 43-292(2) and (4). Michael argues that the evidence was insufficient to support the termination and, more specifically, that the finding that he was unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior is not supported by the record.

From our de novo review, we find that the evidence clearly and convincingly establishes that Michael has substantially and continuously or repeatedly neglected his children and refused to give them his necessary parental care and protection. See § 43-292(2). Also, we find that the evidence clearly and convincingly establishes that Michael has, by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, engaged in conduct which is seriously detrimental to the health, morals, or well-being of his children. See § 43-292(4).

The record shows that Michael had repeated sexual encounters of all types with Patricia's daughter almost every night during her preteen and early teen years. Michael was incarcerated for sexually assaulting Patricia's daughter and did not receive sexual offense counseling while he was incarcerated. Although he testified that this sexual behavior with Patricia's daughter will never happen again because he does not want to go back to prison, since his release from prison on October 23, 1997, Michael has written extremely sexually explicit letters to Patricia's daughter, now 18, suggesting further sexual contact between them. Intentional sexual contact with a minor child has been used to uphold the termination of parental rights under § 43-292(2). See *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992).

In addition to his sexual conduct with Patricia's daughter, Michael kept his adult videos and magazines within easy reach of his children. One witness, who was present in the home only five or six times, observed James start to play an adult video himself. Patricia's daughter testified that she had observed the children watching these adult videos. Almost every witness testified that there was extensive use of sexualized language and sexualized behavior in these children when they were still preschoolers. James' preschool teacher testified that James came to school with a hickey on his neck and called it a hickey. The boys were also observed mimicking sexual encounters and often grabbed each other in the groin area.

Patricia's daughter testified that she and Michael drank alcoholic beverages and smoked marijuana together on a regular basis. She testified that he supplied her with marijuana. Michael admits that he provided alcohol to Patricia's daughter when she was 11 or 12 years old and that he drank alcohol and smoked marijuana on a regular basis throughout this time period.

The nurse who conducted the health screening of the boys shortly after they were removed from Patricia's care testified that when she questioned Jeremiah about a scar on his neck, he told her it was from being hit with a hammer by Michael. The nurse also testified that James and Jeremiah had a large number of scars on their bodies. Michael testified that he spanked the

boys, hit James on the mouth on one occasion, and also spanked Michael, Jr., and James very hard on one occasion.

Michael testified that he has not seen the boys since February 1996. He expressed a desire to eventually be reunified with his children but testified that he "couldn't afford to have them" at the present time. He also testified that he did not feel his parents or sister could take the children because of the children's behavioral problems. Michael had not made any plans for visitation in the 6 months after he had been released from prison and prior to the termination hearing.

The requirements of § 43-292(2) and (4) having been met by clear and convincing evidence, Michael's assignment of error is without merit.

### (c) Failure to Adopt Case Plan

Michael's final argument is that the court's failure to adopt a case plan incorporating reunification for Michael is a violation of public policy and legislative intent and, thus, that the trial court erred in failing to dismiss the petition against him. Michael misinterprets the law; the State is not required to institute a case plan which incorporates reunification unless termination of parental rights is sought under § 43-292(6). See, e.g., *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997) (no requirement that juvenile court institute plan for rehabilitation of parent); *In re Interest of S.B.E. et al.*, 240 Neb. 748, 484 N.W.2d 97 (1992). Since Michael's parental rights were not terminated under § 43-292(6), this assignment of error is without merit.

### 2. PATRICIA'S APPEAL

### (a) Sufficiency of Evidence

The county court terminated Patricia's parental rights under § 43-292(2), (4), (6), and (7). Patricia argues that the trial court made findings of fact not supported by the evidence. Specifically, she alleges that there was no evidence that she was an unfit parent by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, or that she substantially and repeatedly failed to provide a safe and clean home for her children.

Although the juvenile court found that all four grounds existed, the showing of even one of these is sufficient to warrant termination of parental rights. See *In re Interest of Tabitha J.*, 5 Neb. App. 609, 561 N.W.2d 252 (1997). We conduct our review accordingly. From our de novo review, we find that the evidence clearly and convincingly establishes that Patricia has substantially and continuously or repeatedly neglected her children and refused to give them her necessary parental care and protection. See § 43-292(2). Also, we find that the evidence clearly and convincingly establishes that Patricia has, by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, engaged in conduct which is seriously detrimental to the health, morals, or well-being of her children. See § 43-292(4). Because we decide that the evidence is sufficient to terminate Patricia's parental rights under these two grounds, we do not discuss the other grounds for terminating Patricia's parental rights.

The evidence shows that Patricia allowed her children to have access to and did not stop them from looking at adult videos and magazines. James' foster mother saw Patricia give James a lengthy kiss on the mouth, during which Patricia moaned and twisted her head back and forth. James and Jeremiah were also observed to suck Patricia's fingers with an in-and-out motion without reprimand from Patricia.

Furthermore, when Patricia's daughter told Patricia about the abuse she was receiving at Michael's hands, Patricia failed to stop the abuse, and, in fact, even blamed her daughter for the sexual encounters between the two. Patricia even decided to marry Michael while he was incarcerated for sexually abusing her daughter. At the time of the termination hearing, Patricia was living with another man whose parental rights to his own young son had been terminated due in part to allegations of sexual abuse. The continued relationship of a parent with an abusive partner has been used to uphold a termination of parental rights under § 43-292(2). See *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990).

In September 1994, Patricia gave her daughter, then 15 years old, permission to take the car and the boys to Wal-Mart. Patricia was cited for allowing a person under the age of 16 to

operate a motor vehicle and for child abuse as a result of this incident. In July 1995, Patricia was observed hitting James with a 2-foot-long board. She hit him three to four times on the back of his legs and bottom. In March 1996, Patricia was observed hitting the boys in the head with her knuckles. These are merely three examples showing a history of abuse at Patricia's hands.

In 1994, when Michael, Jr., and James were 2 and 3 years old, they were picked up by a citizen from an island in the middle of a highway. The citizen took them to the police station, and the police took them to their home. When they arrived at the home, nobody was even aware that the children were unaccounted for. A somewhat similar incident happened with one of the children in 1995.

The requirements of § 43-292(2) and (4) having been met by clear and convincing evidence, Patricia's assignment of error is without merit.

#### (b) Failure to Submit Case Plans Into Evidence

Patricia also argues that this court does not have a basis to review this case de novo on the State's failure to have the case plans admitted into evidence at the termination hearing. This court has previously determined that in the absence of the case plan from our record, the terms of the case plan can be established by the testimony of a witness familiar with the case plan and a parent's compliance with it. See *In re Interest of Tabitha J.*, 5 Neb. App. 609, 561 N.W.2d 252 (1997). Such was attempted in the instant case. However, because we decide this case on other grounds of termination of parental rights, we need not discuss this assignment of error in further detail.

#### (c) Mental Deficiency

Finally, Patricia argues that the termination order was based upon the finding that she was unable to discharge her parental responsibilities because of her mental deficiency, which would continue for a prolonged indeterminate period of time. See § 43-292(5). Thus, she argues that her parental rights were not properly terminated because the State did not allege § 43-292(5), mental deficiency, as a ground for termination and a guardian ad litem was thus not appointed to protect her interests, as required

when the State alleges mental deficiency as a ground for termination. See *In re Interest of M.M., C.M., and D.M.*, 230 Neb. 388, 431 N.W.2d 611 (1988), citing § 43-292 (Reissue 1984) (appointment of guardian ad litem for parents whose parental rights were sought to be terminated under § 43-292(5) was mandatory; failure to do so found to be plain error requiring reversal). See, also, Neb. Rev. Stat. § 43-292.01 (Reissue 1998).

The county court did not terminate Patricia's parental rights based upon her mental deficiency. However, it is true that it referenced her mental deficiency in addressing each of the other grounds for termination and in finding the evidence sufficient under each of those grounds as charged. In doing so, the county court's opinion pointed out its concern over the State's not charging a mental deficiency ground, but then offering evidence of such deficiency at trial without a guardian ad litem being appointed. The thrust of Patricia's argument is that the termination was, in reality, based upon her mental deficiency and that as such, she was entitled to a guardian ad litem to protect her interests before her parental rights were terminated.

Essentially, Patricia's argument restates the position of the county court below which earnestly expressed a need for the Supreme Court to revisit the decision of *In re Interest of J.N.V.*, 224 Neb. 108, 395 N.W.2d 758 (1986). The county court, relying heavily on the dissent in *In re Interest of J.N.V.*, asserted that the State should not be allowed to circumvent the guardian ad litem requirement of § 42-292 and *In re Interest of M.M.; C.M., and D.M., supra*, by pleading termination of parental rights under a ground other than § 43-292(5), but then supporting the ground pled with evidence of mental deficiency. The county court also suggests that a mental deficiency renders other grounds for termination inappropriate because a violation of each other ground requires that the parent have the requisite mental ability to do or fail to do certain things.

In *In re Interest of J.N.V., supra*, the Supreme Court upheld the termination of parental rights based upon child neglect, § 43-292(2). There was compelling evidence that the parent was mentally deficient to the point that she had become " 'immobilized' " and basically nonfunctioning in that she did not respond to attempts to communicate with her, could not maintain per-

sonal hygiene, and threatened suicide. *In re Interest of J.N.V.*, 224 Neb. at 109, 395 N.W.2d at 760. The State's termination petition proceeded only under § 43-292(2). The Supreme Court recognized that the statute then in effect, § 43-292 (Reissue 1984), required the appointment of a guardian ad litem when termination was sought under § 43-292(5). However, it stated:

> It is true that the State might have elected to assert as a ground for terminating her [parental] rights the mother's inability to discharge her parental responsibilities because of her long-term mental illness or deficiency, § 43-292(5), or that more careful advocacy on the part of the State would have suggested that it amend its pleading by adding § 43-292(5) as a ground for the judgment sought. . . .
>
>  . . . .
>  . . . While it might have been kinder in these sad and unfortunate circumstances for the State to have proceeded under § 43-292(5), it was not required to do so.

*In re Interest of J.N.V.*, 224 Neb. at 111-12, 395 N.W.2d at 760-61.

The dissent in *In re Interest of J.N.V.*, 224 Neb. 108, 114, 395 N.W.2d 758, 762 (1986), argued that the majority ignored the statutory requirement for a guardian ad litem when a mental deficiency was involved and deprived a mentally ill parent of "the valuable right to have her interests protected by a guardian ad litem." The dissent in *In re Interest of J.N.V.* also recognized the inherent distinction in applying the several grounds for termination of parental rights provided in § 43-292 to mentally ill parents and those who are not mentally ill. It suggested, for example, that the former could not legally neglect a child because "[t]he notion of neglect contemplates the existence, among other things, of intelligence, judgment, and reason, rendering one capable of recognizing and adhering to a required standard of care." 224 Neb. at 113, 395 N.W.2d at 762. Finally, the dissent raised due process concerns resulting from lack of notice that mental capacity would be the subject of the termination hearing when, in fact, it was an integral part of the State's evidence in support of termination.

 ■ The county court in this case addressed several of these issues as part of its detailed opinion. While it was uncomfort-

able with the result, it deemed *In re Interest of J.N.V.* controlling. We believe *In re Interest of J.N.V.* clearly holds that the presence of a mental deficiency such as proved here does not preclude termination of parental rights under § 43-292(2). Indeed, a logical extension of *In re Interest of J.N.V.* is that such mental deficiency also does not preclude termination under § 43-292(4). These are the only two grounds that we have discussed in this appeal as to Patricia. While portions of the dissent in *In re Interest of J.N.V.* are somewhat persuasive, the decision in that case still stands, and the county court was correct to find the evidence sufficient to terminate Patricia's parental rights under § 43-292(2) and (4). The presence of a mental deficiency in a parent does not preclude the State from seeking, or the courts from granting, termination under § 43-292(2) and (4).

As to Patricia's remaining argument that we should find plain error because a guardian ad litem was denied her, we find this argument also to be without merit. The part of § 43-292 requiring a guardian ad litem under subsection (5) in effect at the time of the present termination is the same as that in effect when *In re Interest of J.N.V.* was decided. No guardian ad litem was appointed in *In re Interest of J.N.V.*, and plain error was not found there. That is despite the dissent bringing the issue to the forefront in that case. Thus, we believe *In re Interest of J.N.V.* is controlling on this issue as well. We are aware that *In re Interest of M.M., C.M., and D.M., supra,* was decided after *In re Interest of J.N.V.*, but *In re Interest of M.M., C.M., and D.M.* specifically sought termination under subsection (5). Based on *In re Interest of J.N.V.*, and because subsection (5) was not alleged as a ground here, we cannot find plain error in the failure to appoint a guardian ad litem for Patricia.

The county court was concerned with what it perceived to be unfairness to Patricia because the State elected not to plead subsection (5) and, thus, no guardian ad litem appointment was required. For the sake of completeness, we note that a county court has discretionary authority to appoint a guardian ad litem in termination proceedings for a parent with a mental deficiency, regardless of whether or not § 43-292(5) is pled as a ground for termination. See *In re Interest of D.A.*, 239 Neb. 264, 475 N.W.2d 511 (1991) (even where there is no statutory obli-

gation to appoint guardian ad litem, it is within inherent power of courts, and is both proper and desirable, that they appoint guardian ad litem for litigant when reasonably convinced litigant is not mentally competent to comprehend significance of legal proceedings, litigant is unable to intelligently and understandingly participate in protection of her or his best interests, and such guardian is needed to protect those interests). Since the date of the termination below, this inherent power has been legislatively recognized in termination proceedings. See § 43-292.01 (court *shall* appoint guardian ad litem when termination is sought under subsection (5) and *may* appoint guardian ad litem for any party in termination case as deemed necessary or desirable). We also note that no application was made to appoint a guardian ad litem for Patricia.

### 3. BEST INTERESTS OF CHILDREN

We find, by clear and convincing evidence, that the best interests of these children require termination of Michael's and Patricia's parental rights. At the time of the termination hearing, these children had been in foster care for over 2 years. Despite intensive rehabilitation services, the care they received from Patricia had improved only marginally in these 2 years. It had not yet improved to the point where Patricia was allowed to have unsupervised visitation. In fact, when the level of direct supervision was decreased, a dramatic increase in behavioral problems was viewed in the children which Patricia was unable or unwilling to control. The children had not seen Michael since February 1996. Michael made no noticeable attempts to secure visitation after his release from prison, 6 months prior to the termination hearing.

When parents cannot rehabilitate themselves within a reasonable time, the best interests of a child require that a final disposition be made without delay. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). These children have suffered abuse and neglect, if not at the hands of their parents, then certainly from their parents' failure to protect them. At the time of the termination hearing, James was hospitalized for, among other things, suicidal impulses. This is not the first time he has required hospitalization for mental health problems. A psychia-

trist testified that all of the children have mental problems to some extent and have been victimized by neglect, physical abuse, and, possibly, sexual abuse. All of these children have special needs requiring extensive time from a parent who is willing and able to set strict guidelines and stringent boundaries. Because Patricia and Michael are unable to fulfill these special needs, it is in the children's best interests that their parental rights be terminated.

## VII. CONCLUSION

We conclude from our de novo review of the record that the evidence clearly and convincingly establishes that the children have been substantially and continuously neglected and have not been given necessary parental care by both Patricia and Michael; that both parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior which is seriously detrimental to the health, morals, and well-being of the children; and that it is in the children's best interests that the parental rights of Michael and Patricia be terminated.

Therefore, the judgment of the county court, sitting as a juvenile court, is affirmed.

AFFIRMED.