IN RE INTEREST OF MICHAEL B., JR., ET AL., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE, V. MICHAEL B., APPELLANT, AND PATRICIA B., APPELLEE AND CROSS-APPELLANT.
604 N.W.2d 405

Filed January 14, 2000.   No. S-98-516.

Stephen A. Scherr, of Whelan & Scherr, for appellant Michael B.

Brenda L. McCrady for appellee Patricia B.

S. Colin Palm, Deputy Adams County Attorney, for appellee State.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
## NATURE OF CASE
The Adams County Court, sitting as a juvenile court, terminated the parental rights of Patricia B. to her three minor children pursuant to Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Cum. Supp. 1996). The Nebraska Court of Appeals affirmed the juvenile court's order. See *In re Interest of Michael B. et al.*, 8 Neb. App. 411, 594 N.W.2d 674 (1999). Patricia now petitions this court for further review, contending that the termination of her parental rights was based on a finding that she had a mental deficiency but that the State did not allege such ground for termination and failed to appoint a guardian ad litem for her. We affirm.

## BACKGROUND
Patricia is the natural mother of Michael B., Jr., born May 29, 1990; James B., born June 23, 1991; and Jeremiah B., born May 7, 1993. Patricia also has a daughter from a former marriage, born August 18, 1979, who is not part of the present action.

On March 8, 1996, the State filed a petition requesting that Michael, Jr.; James; and Jeremiah be adjudicated as juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993), and temporary care and custody of the children was placed with the then Nebraska Department of Social Services (DSS). On July 24, 1996, an amended petition was filed which alleged (1) that the children were homeless or destitute or with-

out proper support through no fault of their parents and (2) that the children lacked proper parental care by reason of the fault or habits of their parents or that the children's parents neglected or refused to provide proper or necessary subsistence or other care necessary for the health, morals, or well-being of the children. Specifically, the petition alleged, inter alia, that Patricia had hit the children in their head and facial areas with her knuckles; that an investigation revealed that the children had numerous abrasions and bruises on their heads and faces; that Michael, Jr., reported that his brothers got spanked with wooden spoons; and that there had been minimal compliance with the voluntary services offered by DSS over the past 5 years.

Patricia admitted or pled no contest to the allegations contained in the petition, and the children were adjudicated on September 18, 1996. Subsequently, at least two case plans were adopted, and DSS worked extensively with Patricia in regard to the goals of those case plans.

On December 8, 1997, the State filed a supplemental petition seeking termination of Patricia's parental rights to Michael, Jr.; James; and Jeremiah, pursuant to § 43-292(2), (4), (6), and (7). The State also alleged that such termination was in the best interests of the children.

At the termination hearing, the State presented many witnesses, two of whom were psychological expert witnesses who had evaluated Patricia. The first expert witness testified that Patricia has possible borderline intelligence and a mixed personality disorder with paranoid and antisocial behaviors. This witness further testified that Patricia does not possess the adequate parenting skills to provide a nurturing and safe environment for her children and is not capable of acquiring those skills. The second expert witness testified that Patricia has a poor prognosis for being able to parent her children. This witness testified that Patricia is intellectually limited and that this limitation, as well as her suspiciousness, distrust, and anger, hampers her ability to love and to be responsible. This witness further testified that Patricia's history indicates that she lacks the ability to care about her children's needs and feelings and to protect the children. Finally, this witness testified that Patricia is

functioning on a borderline retarded range of ability, and the witness gave his opinion that Patricia has a mental deficiency.

Following the termination hearing, the juvenile court found that Patricia had substantially and continuously or repeatedly neglected her children and had refused to give them the necessary parental care and protection. See § 43-292(2). The juvenile court found that Patricia was unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is seriously detrimental to the health, morals, or well-being of the children. See § 43-292(4). The juvenile court also found that the children were adjudicated as juveniles within the meaning of § 43-247(3)(a) and that reasonable efforts had failed to correct the conditions leading to the adjudication. See § 43-292(6). Finally, the juvenile court found that the children had been in out-of-home placement for 18 or more consecutive months and that Patricia has failed to correct the conditions leading to the children's out-of-home placement in spite of reasonable efforts and services to Patricia. See § 43-292(7).

The juvenile court also found that the State had shown by clear and convincing evidence that Patricia had a mental deficiency which would continue for a duration preventing her from reuniting with and caring for her children.

The juvenile court found that Michael, Jr., had oppositional/defiant disorder and attention deficit hyperactivity disorder and that he had exhibited sexualized behavior. It found that James had been diagnosed with attention deficit hyperactivity disorder, major depression, and posttraumatic stress disorder; that he was on medications for seizure disorders; that he had been hospitalized on several occasions due to disruptive behavioral problems; that he had exhibited significant sexualized behavior; and that he had numerous scars reflective of abuse with no perpetrator being proved. The juvenile court found that Jeremiah was diagnosed with possible attention deficit hyperactivity disorder and developmental speech disorder; that he showed signs of disruptive behavior; that he had exhibited sexualized behavior; and that he had numerous scars on his body caused from physical abuse with no evidence of a perpetrator. The juvenile court further found that all three children exhibited

extensive learned use of vulgar and sexualized language; possessed special needs requiring strict and consistent limits; and required parents who could provide a stable, safe, and moral environment and a commitment of time to devote to the children's special needs.

With regard to Patricia, the juvenile court found that physical abuse to the children had occurred as a result of the discipline she exercised. It found that Patricia did not demonstrate an ability to parent her children and handle their behaviors without external intervention and did not comply with the case plans adopted by the juvenile court. However, the juvenile court found that Patricia's mental deficiency hindered her ability to follow and complete the juvenile court's case plans. It also found that her mental deficiency prevented her from profiting from services offered by DSS.

The juvenile court also found that Patricia had seriously perverted her children's well-being because of her extreme indulgence of sensual pleasures; had exhibited indecent, base, and unprincipled behavior in the presence of her children; and had excited her children's lustful desires by personal example and by allowing lustful movies and periodicals to be freely accessible to her children. It found that her history of personal abuse and mental deficiency is the proximate cause of her present attitudes, beliefs, and lifestyle.

The juvenile court found that Patricia used alcohol and drugs while she had the care and custody of her children; that after the children were removed from her care, she associated with and continues to associate with persons who are alcohol dependent and with persons who have been involved with abusive relationships with children; and that she allowed her minor daughter to also use alcohol and drugs.

The juvenile court further found that Patricia failed to place herself in a position to resume the care and custody of her children and would not be able to do so within a reasonable time because of her mental deficiency; that she substantially and repeatedly failed to provide a safe, clean, and moral environment for her children because of her mental deficiency; that she does not have the capacity to provide proper care, structure, nurturing, and protection for her children; and that she was not able

to provide a clean home for her children without external support.

The juvenile court found that it was in the children's best interests to terminate Patricia's parental rights. The parental rights of the children's father, Michael B., were also terminated.

Michael appealed the termination of his parental rights, and Patricia cross-appealed. The Court of Appeals affirmed the judgment of the juvenile court. See *In re Interest of Michael B. et al.*, 8 Neb. App. 411, 594 N.W.2d 674 (1999). The Court of Appeals found that the evidence was sufficient to terminate Patricia's parental rights under § 43-292(2) and (4), and because it so found, it did not discuss the other grounds for terminating Patricia's parental rights that were alleged in the petition. With regard to Patricia's mental deficiency, the Court of Appeals determined that the juvenile court did not terminate Patricia's parental rights based upon her mental deficiency. However, the Court of Appeals recognized that the juvenile court referenced Patricia's mental deficiency in addressing each of the grounds for termination and in finding the evidence sufficient under each of those grounds as charged. The Court of Appeals further concluded that *In re Interest of J.N.V.*, 224 Neb. 108, 395 N.W.2d 758 (1986), is controlling and holds that the presence of a mental deficiency in a parent does not preclude termination of parental rights under § 43-292(2) and that a logical extension of that holding is that such mental deficiency also does not preclude termination under § 43-292(4). Finally, the Court of Appeals determined that based on *In re Interest of J.N.V., supra*, and because § 43-292(5) was not alleged as a ground for termination, it could not find plain error in the failure to appoint a guardian ad litem for Patricia.

Patricia now petitions this court for further review. Michael did not challenge the decision of the Court of Appeals.

## STANDARD OF REVIEW

█ In an appeal from a juvenile court order terminating parental rights, the appellate court tries factual questions de novo on the record. Appellate review is independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court may give weight to the fact that the juvenile

court observed the witnesses and accepted one version of facts over another. *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999); *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

## ASSIGNMENT OF ERROR

Patricia alleges that the Court of Appeals erred in affirming the order of the juvenile court terminating Patricia's parental rights based upon the juvenile court's finding that Patricia was unable to discharge parental responsibilities because of a mental deficiency, yet the State failed to allege such ground for termination of Patricia's parental rights and no guardian ad litem was appointed for Patricia.

## ANALYSIS

Patricia argues that the termination order was based upon the finding that she was unable to discharge her parental responsibilities because of her mental deficiency, which would continue for a prolonged indeterminate period of time. See § 43-292(5). Thus, she argues that her parental rights were not properly terminated because the State did not allege mental deficiency as a ground for termination under § 43-292(5), and a guardian ad litem was thus not appointed to protect her interests as required when the State alleges mental deficiency as a ground for termination.

In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the children's best interests. *In re Interest of Constance G., supra.* Clear and convincing evidence means that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Joshua M. et al., supra.* In the instant case, the juvenile court found that termination was in the best interests of the children and that there was clear and convincing evidence establishing the grounds for terminations specified in § 43-292(2), (4), (6), and (7), which were the grounds alleged in the petition. Section 43-292(2) requires a finding that the parent has substantially and continuously or repeatedly neglected and refused to give the

juvenile or a sibling necessary parental care and protection. Section 43-292(4) requires a finding that the parent is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is seriously detrimental to the health, morals, or well-being of the children. Section 43-292(6) requires a finding that the parent has failed to correct the conditions leading to the determination that the child is one as described in § 43-247(3)(a). Section 43-292(7) requires a finding that the parent failed to correct the conditions leading to the out-of-home placement in spite of reasonable efforts and services and the juvenile has been in out-of-home placement for 18 or more consecutive months.

The State did not allege in its petition the separate termination ground based on mental deficiency, § 43-292(5), yet the State provided evidence that Patricia had a mental deficiency which would continue for a duration preventing her from reuniting with and caring for her children. Section 43-292(5) provides that a juvenile court may terminate parental rights when the parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period. The statute further provides that when termination of parental rights is sought under subsection (5), the court shall appoint a guardian ad litem for the alleged incompetent parent. See *In re Interest of M.M., C.M., and D.M.*, 230 Neb. 388, 431 N.W.2d 611 (1988), citing § 43-292 (appointment of guardian ad litem for parents whose parental rights were sought to be terminated under § 43-292(5) was mandatory; failure to do so found to be plain error requiring reversal).

This court has previously addressed a similar situation to the one at hand, which the Court of Appeals found to be controlling. In the case *In re Interest of J.N.V.*, 224 Neb. 108, 395 N.W.2d 758 (1986) (Caporale, J., dissenting; Krivosha, C.J., and Shanahan, J., join), the State used § 43-292(2) as the operative section to terminate a mother's rights. The mother was diagnosed as paranoid schizophrenic and long-term hospitalization was recommended, as her condition was not expected to improve in the near future. The court upheld the termination of

the mother's rights under § 43-292(2). The majority of the court determined:

It is true that the State might have elected to assert as a ground for terminating her rights the mother's inability to discharge her parental responsibilities because of her long-term mental illness or deficiency, § 43-292(5), or that more careful advocacy on the part of the State would have suggested that it amend its pleading by adding § 43-292(5) as a ground for the judgment it sought. . . .

. . . .

. . . While it might have been kinder in these sad and unfortunate circumstances for the State to have proceeded under § 43-292(5), it was not required to do so.

*In re Interest of J.N.V.*, 224 Neb. at 111-12, 395 N.W.2d at 760-61.

Patricia urges us to adopt the three-justice dissent in *In re Interest of J.N.V., supra.* The dissent concluded that the State chose to ignore the fact that it was dealing with a mentally ill mother who, through no fault of her own, could not care for her child and that the State had treated her as if she were of sound mind and had consciously elected to neglect her parental responsibilities. The dissent further pointed out that the majority opinion makes no distinction between a mentally ill parent and one who is not, while § 43-292 does make such a distinction, and does so for good reason. *In re Interest of J.N.V., supra.* The dissent noted that "neglect contemplates the existence, among other things, of intelligence, judgment, and reason, rendering one capable of recognizing and adhering to a required standard of care." *Id.* at 113, 395 N.W.2d at 762. The dissent reasoned that the real question in the case was whether the mother had the capacity to neglect her child and concluded that the evidence established that the mother did not have such capacity and that she therefore did not come within the purview of § 43-292(2). *In re Interest of J.N.V., supra.* The dissent stated:

The evidence establishes . . . that [the mother] may come within the purview of § 43-292(5). The difficulty is that the State did not give the mother notice, through a guardian ad litem, that it was her mental ability to be a parent which was at issue. . . .

> The majority opinion ignores a statutory requirement and deprives a mentally ill mother of the valuable right to have her interests protected by a guardian ad litem. Proper notice is more than a matter of form, it is a constitutional requirement which is met only when one is advised of the matters to be considered in a manner which is fair in view of the circumstances and conditions existent at the time. . . . It is fundamentally unfair to tell a mother it is the neglect of her son which is at issue and then try her for lacking the mental capacity to carry out her parental responsibilities.

(Citations omitted.) *In re Interest of J.N.V.*, 224 Neb. 108, 113-14, 395 N.W.2d 758, 762 (1986) (Caporale, J., dissenting; Krivosha, C.J., and Shanahan, J., join).

It is clear under § 43-292 that had subsection (5) been alleged in the petition, a guardian ad litem would have had to have been appointed for Patricia. However, subsection (5) was not alleged in the petition, but evidence of Patricia's mental deficiency was presented at the termination hearing. The question becomes whether a guardian ad litem was necessary under these circumstances. If a guardian ad litem had been appointed in this case, he or she would have done one of two things. The guardian ad litem either would have joined the State's attorney in his efforts or would have written his or her own report. By simply backing the State's attorney, the guardian ad litem would not have changed the termination proceedings in any way. If the guardian ad litem chose to write his or her own report and performed his or her job appropriately, the guardian ad litem's report would be adverse to Patricia. Therefore, Patricia would not have benefited by having a guardian ad litem appointed. The only action a guardian ad litem could have taken to benefit Patricia in this case would have been to retain expert witnesses to rebut the testimony of the State's expert witnesses as to Patricia's mental deficiencies. Because Patricia's mental deficiency is not a ground for the termination, the rebuttal testimony, if such testimony could have been procured at all, would not have changed the outcome of this case.

In this case, the State did not allege mental deficiency as that term is defined in § 43-292(5). Therefore, it was improper for

the State to put forth evidence of Patricia's mental deficiency, as this evidence was immaterial due to the State's failure to include mental deficiency as an allegation in drafting its petition. Whether this failure was an oversight or an attempt to save costs so that a guardian ad litem would not have to be appointed by reason of an allegation under § 43-292(5) does not make any difference.

■ We have said that the statute authorizing termination of parental rights for mental illness or mental deficiency means only those mental illnesses or mental deficiencies which render the parents unable to discharge their parental responsibilities. *In re Interest of Holley*, 209 Neb. 437, 308 N.W.2d 341 (1981). In other words, mental deficiency, in and of itself, is not a ground for termination, but it must be shown that the mental deficiency caused the failure in parenting which, in turn, would dictate termination in the best interests of the children.

In *In re Interest of J.N.V.*, 224 Neb. 108, 395 N.W.2d 758 (1986) (Caporale, J., dissenting; Krivosha, C.J., and Shanahan, J., join), the mother gave birth to her baby on the floor of a kitchen; had no plans to care for the newborn baby; had no clothing, crib, or food for herself or the baby; and was diagnosed as a paranoid schizophrenic who, the day before the hearing, did not respond to efforts to communicate with her, exhibited extreme anger, was continually nervous and agitated, and threatened suicide. In that termination of parental rights case, mental deficiency under § 43-292(5) was not alleged as a ground for termination. The dissent in that case said that the State simply chose to ignore the fact that it was dealing with a mentally ill mother who, through no fault of her own, could not care for her son.

The facts of *In re Interest of J.N.V., supra*, are easily distinguishable from this case.

The evidence shows that Patricia allowed her children to have access to and did not stop them from looking at adult videos and magazines. Specifically, one witness testified that he saw the children look at adult magazines on a couple of occasions. Patricia's daughter also testified that she saw the children watching adult videos and that there were adult magazines in the house.

The record is also replete with evidence that the children have been exposed to repeated lewd and lascivious behavior. A number of witnesses testified to the foul language used by the children. At least one witness heard Patricia use foul language in the presence of the children. Witnesses who supervised visits between Patricia and the children after the children were removed from the home testified that Patricia would not react when the children used foul language and would have to be prompted to react to such language.

The children also exhibit sexualized behavior. The children's foster mother testified that the children would grab each other between the legs; that Jeremiah would talk about having sex; that James fondled the breasts of a mannequin; that she found Michael, Jr., and James in the same bed together and Michael, Jr., had his sweats and underwear down past his knees and James was lying on the bed with his head under the covers; and that she observed James rub his genitals up against objects. The children's foster mother also saw Patricia give James a lengthy kiss on the mouth, during which Patricia moaned and twisted her head back and forth.

Another witness observed James holding a pole between his legs and moving his body in a way that imitates a male during intercourse. The same witness also observed the children grabbing their own genitals and each other's.

Patricia's daughter testified that she saw the children in the bathtub together and in their beds playing with each other's genital areas and trying to "French kiss" each other. She also testified that she, Patricia, and Michael smoked marijuana and drank alcohol in the house and that she had had sexual intercourse in the house with Patricia's knowledge. Patricia's daughter was a minor during these times.

James and Jeremiah were observed to suck Patricia's fingers with an in-and-out motion, without reprimand from Patricia. One witness observed Jeremiah several times attempt to give Patricia a kiss with his mouth open and his tongue out, and Patricia simply laughed.

Patricia's daughter was sexually abused by Michael, and when her daughter told her about the abuse, Patricia failed to stop the abuse, and, in fact, blamed her daughter for the sexual

encounters between the two. Patricia even decided to marry Michael while he was incarcerated for sexually abusing her daughter and after she believed her daughter's version of what had happened between Michael and her daughter. At the time of the termination hearing, Patricia was living with another man whose parental rights to his own son had been terminated due in part to allegations of sexual abuse. Patricia also remained friends with yet another man after she found out he was a convicted child molester.

In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). Thus, only one ground for termination need be proved in order for Patricia's parental rights to be terminated.

In considering the above evidence, we conclude that there is clear and convincing evidence independent of any mental deficiency that Patricia is an unfit parent by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found to be seriously detrimental to the health, morals, or well-being of the juveniles. Therefore, Patricia's parental rights are terminated pursuant to § 43-292(4). Because we have concluded that the evidence is sufficient to terminate Patricia's parental rights under this ground, we need not discuss the other grounds for terminating Patricia's parental rights.

Having determined that the State has proved by clear and convincing evidence one of the grounds for termination under § 43-292, we must next examine whether the State has also shown, by the same quantum of proof, that termination of parental rights would be in the best interests of the children.

Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the children require termination of the parental rights. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.* At the time of the termination hearing, the children had been in foster

care for over 2 years. Intensive rehabilitation services were provided to Patricia, yet the care the children received from her had improved only slightly. Patricia's parenting skills had not improved to a point where she was allowed to have unsupervised visitation. A psychiatrist testified that all the children have mental problems to some extent and have been victimized by neglect, physical abuse, and possibly, sexual abuse. All of the children have special needs requiring extensive time from a parent who is willing and able to set strict guidelines and stringent boundaries. It is evident that Patricia has been either unable or unwilling to meet the physical and emotional needs of her children in the past and demonstrates no ability to do so in the future. The termination of Patricia's parental rights is in the best interests of her children.

## CONCLUSION

Based upon our de novo review of the record, we conclude that the State has proved by clear and convincing evidence that the debauchery and lewd and lascivious conduct, together with the habitual use of illegal drugs, under § 43-292(4), exists independently of Patricia's mental deficiencies and that termination is in the children's best interests. Accordingly, we affirm the judgment of the Court of Appeals, affirming the county court's order terminating the parental rights of Patricia to Michael, Jr.; James; and Jeremiah.

AFFIRMED.