IN RE INTEREST OF JAMIE M., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
GERMAI M., APPELLANT.
714 N.W.2d 780

Filed May 16, 2006. No. A-05-438.

Hunter A.H. Campbell, of Campbell Law Office, for appellant.

Mark J. Young, Hall County Attorney, for appellee.

Jay B. Judds, guardian ad litem.

Sievers, Carlson, and Cassel, Judges.

Sievers, Judge.

Germai M. appeals from the March 3, 2005, order of the county court for Hall County, sitting as a juvenile court, terminating his parental rights to his daughter, Jamie M. The State's case for termination was based on the claim that Germai had murdered Jamie M.'s sister.

## FACTUAL AND PROCEDURAL BACKGROUND

Jamie, born September 16, 2002, was removed from her home and placed in emergency foster care on July 23, 2003, after her father, Germai, was arrested for the death of Jamie's sister, Diana M.

On July 24, 2003, the State filed a juvenile petition alleging that Jamie was a minor child pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002). The judge's notes filed on October 29 show that Jamie's parents entered a plea of no contest and that Jamie was adjudged as alleged. The notes also reflect that Jamie was placed in the temporary custody of the Nebraska Department of Health and Human Services (DHHS).

On February 27, 2004, the State filed its motion to terminate the parental rights of Germai to Jamie. Although the motion also made allegations against Jamie's mother, who is Germai's wife, this appeal concerns only the allegations against Germai. The State alleged:

(1) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;

(2) The parent has inflicted upon the juvenile, by other than accidental means, serious bodily injury;

(3) The parent of the juvenile has subjected the juvenile to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse;

(4) The parent has (a) committed murder of another child of the parent, (b) committed voluntary manslaughter of another child of the parent, (c) aided or abetted, attempted, conspired, or solicited to commit murder, or aided or abetted voluntary manslaughter of the juvenile or another child of the parent, or (d) committed a felony assault that resulted

in serious bodily injury to the juvenile or another minor child of the parent.

The State requested that the court enter an order terminating the parental rights of Germai and place Jamie for adoption. At the March 9 arraignment on the State's motion to terminate, Germai entered a denial of the motion.

At a hearing on the State's motion to terminate his parental rights, Germai testified that he was arrested on July 23, 2003, regarding Diana's death. Germai testified that he had been in custody since his arrest and had not seen Jamie since the time of his arrest. Germai testified that in August 2004, he was convicted by a jury of second degree murder and child abuse resulting in death. Germai was sentenced to 80 years to life in prison for each of the two convictions, with the sentences to be served consecutively, but the convictions had been appealed. Germai acknowledged that he had testified at his murder trial that he believed his wife had committed the crimes against their daughter Diana. Germai testified that while he saw bruises on Diana's body, he "did not call anybody." Germai testified that he was in bed when Diana's injuries occurred and that he did not know whether Jamie was in the room when Diana was injured. Germai testified that since his incarceration, he has inquired of family members about Jamie.

Barbara N. testified that she had been Jamie's foster mother for 18 months and that Jamie originally came to her as an emergency placement. Barbara testified that Jamie was a very traumatized baby—she would act like it hurt if her foster parents touched her, and she was very emotionless, looked sad, and had empty eyes. Barbara testified that at the time of the termination hearing, Jamie was a very happy 2-year-old, though she still had "spells" when she became withdrawn. Barbara testified that Jamie had "identified developmental delays" and that there was concern for her emotional and psychological state. Barbara testified that the school system was working with Jamie on an individual education plan. Barbara also testified that Jamie had become part of the foster family and that she was willing to adopt Jamie.

Judy Pfeifer, a child protection and safety worker, testified that she was assigned to Jamie's case in October 2003. Pfeifer

testified that children who have witnessed abuse or violence toward a sibling "have a tendency to withdraw; loss of appetite, . . . fearful of strangers, or some will do the reverse and be overly friendly with strangers." Pfeifer testified that withdrawing is one of the major issues watched for. Pfeifer testified that if children go back to a violent home, they often end up back in the system. Pfeifer testified that if Germai was released from prison in the near future, she would have concerns about returning Jamie to him because of the extent of the abuse to her sister, Diana. Pfeifer testified that Jamie needs permanency, especially at her age, and that it would be in Jamie's best interests if Germai's parental rights were terminated.

In a journal entry dated March 3, 2005, the juvenile court found that Germai had been convicted of the murder of Diana, Jamie's sister, and that Germai had been sentenced to serve a period of 80 years' to life imprisonment for such offense. The juvenile court also found that it was "abundantly clear to the Court that Jamie . . . has herself either been abused or witnessed traumatic events in her parental home." The juvenile court found that it was in Jamie's best interests that Germai's parental rights be terminated. The juvenile court terminated Germai's parental rights to Jamie. Germai now appeals.

## ASSIGNMENT OF ERROR

Germai alleges that the juvenile court erred in terminating his parental rights to his daughter, Jamie.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Michael R.*, 11 Neb. App. 903, 662 N.W.2d 632 (2003).

## ANALYSIS

*Final Judgment and Use of Criminal Convictions.*

Germai argues that no final judgment certifying that he had been convicted of a criminal offense delineated as a statutory

ground requiring termination was available to the trial court, and thus, there was no clear and convincing evidence meriting the termination of his parental rights. Germai argues that because his conviction is presently under appeal, the State failed to establish that a final judgment has been entered. Germai argues that "[a criminal] conviction that is appealed does not establish by clear and convincing evidence that criminal conduct ever took place." Brief for appellant at 3. In support of his argument, Germai cites *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003). While *Gales* states that "[a] *sentence* is not a final judgment until the entry of a final mandate of an appellate court," other authority is more on point. (Emphasis supplied.) See *id*. at 622, 658 N.W.2d at 622.

The State moved to terminate Germai's parental rights under Neb. Rev. Stat. § 43-292(2), (8), (9), and (10) (Reissue 2004). And, while the juvenile court's journal entry did not specify under which subsection or subsections Germai's rights were terminated, the court's explanation of the grounds for its termination decision appears to encompass all of the statutory grounds alleged in the State's motion. In its March 3, 2005, journal entry, the juvenile court found that "[f]rom the evidence presented, the juvenile's father, Germai . . . stands convicted of the murder of a sibling of the juvenile, Diana . . . and has been sentenced to serve a period of not less than eighty years to life imprisonment for said offense." Such finding by the juvenile court relates to the statutory ground for termination found in § 43-292(10). The juvenile court also said that "Jamie . . . has herself either been abused or witnessed traumatic events in her parental home." Such finding by the juvenile court relates to the statutory grounds for termination found in § 43-292(2), (8), and (9). "We have held that the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. 'Thus, only one ground for termination need be proved in order [to terminate] parental rights . . . .' " *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 173, 655 N.W.2d 672, 691 (2003) (quoting *In re Interest of Michael B. et al.*, 258 Neb. 545, 604 N.W.2d 405 (2000)). And, clear and convincing evidence is "that amount of evidence which produces in the trier of fact a

firm belief or conviction about the existence of the fact to be proved." *In re Interest of Aaron D.*, 269 Neb. 249, 259, 691 N.W.2d 164, 172 (2005).

 Section 43-292(10) provides that parental rights may be terminated when

> [t]he parent has (a) committed murder of another child of the parent, (b) committed voluntary manslaughter of another child of the parent, (c) aided or abetted, attempted, conspired, or solicited to commit murder, or aided or abetted voluntary manslaughter of the juvenile or another child of the parent, or (d) committed a felony assault that resulted in serious bodily injury to the juvenile or another minor child of the parent.

As stated previously, Germai was convicted by a jury of second degree murder and child abuse resulting in the death of his daughter Diana. But, the record establishes that such convictions are on appeal and thus not yet final. See *Shuck v. Jacob*, 250 Neb. 126, 548 N.W.2d 332 (1996) (conviction and sentence are not considered final judgments until after appeal, if there is indeed appeal). Accordingly, such convictions cannot be used to prove that Germai abused Diana, resulting in her death, or that he is guilty of second degree murder in her death. See *id.* (criminal conviction being appealed cannot be used to invoke doctrine of collateral estoppel as to defendant's liability in civil suit).

Without the criminal convictions to rely on, the State needed to present an independent case establishing grounds for termination of parental rights, but such case was not presented to the juvenile court here. There is, for example, no evidence showing the extent of Diana's injuries, no coroner's report showing the cause of her death, and no testimony or other evidence that Germai caused Diana's injuries or death. Instead, the State relied entirely upon Germai's criminal convictions. Therefore, to the extent that the juvenile court's order of termination rests on the criminal convictions and the fact that Germai murdered Jamie's sister, such finding cannot stand. Thus, grounds for termination of Germai's parental rights to Jamie did not exist under § 43-292(10).

 Clearly, the evidence before the juvenile court was inadequate, as Germai's criminal convictions were not final. Therefore,

for the sake of judicial economy, we have purposely waited for the outcome of the criminal appeal, which gives finality to Germai's convictions. See *Shuck v. Jacob, supra.* Thus, despite the evidentiary shortcomings in our record, we can and do take judicial notice of the Nebraska Supreme Court's recent opinion which makes the convictions final. See *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006). Grounds for termination of Germai's parental rights to Jamie now exist under § 43-292(10).

*Best Interests.*

Although Jamie has not yet experienced actual injury or physical harm, " 'a court need not await certain disaster to come into fruition before taking protective steps in the interest of a minor child.' " *In re Interest of Anthony V.*, 12 Neb. App. 567, 583, 680 N.W.2d 221, 233 (2004) (quoting *In re Interest of S.L.P.*, 230 Neb. 635, 432 N.W.2d 826 (1988)). Furthermore, Pfeifer testified that Jamie needs permanency, especially at her age, and that it would be in Jamie's best interests if Germai's rights were terminated. Upon de novo review, we conclude that it is in Jamie's best interests to terminate Germai's parental rights.

## CONCLUSION

For the reasons stated above, we find that the State failed to prove to the juvenile court by clear and convincing evidence grounds for terminating Germai's parental rights to Jamie. However, we take judicial notice of the Nebraska Supreme Court's recent opinion which makes Germai's criminal convictions for the death of Jamie's sister, Diana, final. Thus, grounds now exist under § 43-292(10) to terminate Germai's parental rights to Jamie, and such termination is in her best interests.

AFFIRMED.