indicated that he knew he could receive life imprisonment notwithstanding his confession. We therefore conclude that Turner's confession was voluntary and, thus, properly admissible at trial. We affirm his convictions and sentences.

Affirmed.

———————————

Wayne G., appellee, v.
Jacqueline W., appellant.
___ N.W.2d ___

Filed June 6, 2014.    No. S-12-1037.

1. **Juvenile Courts: Judgments: Appeal and Error.** Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.
2. **Parental Rights: Evidence: Proof.** Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests.
3. **Appeal and Error.** An appellate court may, at its option, notice plain error.
4. **Parental Rights: Mental Competency: Guardians Ad Litem: Case Disapproved: Appeal and Error.** Where an appellate court finds that multiple statutory grounds support termination of parental rights, including, but not limited to, Neb. Rev. Stat. § 43-292(5) (Cum. Supp. 2012), a failure to appoint a guardian ad litem for the parent is error, but not error requiring automatic reversal. In that circumstance, the failure to appoint a guardian ad litem will generally not require reversal unless it is assigned as error on appeal and shown to have been prejudicial to the parent. To the extent that *In re Interest of Presten O.*, 18 Neb. App. 259, 778 N.W.2d 759 (2010), is inconsistent with this holding, it is disapproved.

Petition for further review from the Court of Appeals, Inbody, Chief Judge, and Irwin and Riedmann, Judges, on appeal thereto from the County Court for Seward County, Gerald E. Rouse, Judge. Judgment of Court of Appeals affirmed.

Jerrod P. Jaeger, of Jaeger Law Office, P.C., L.L.O., for appellant.

Eric J. Williams for appellee.

Gregory C. Damman, of Blevens & Damman, guardian ad litem.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

The Nebraska Court of Appeals affirmed the judgment of the county court for Seward County terminating the parental rights of Wayne G. to Jaidyn G., a minor child, on the petition of Jacqueline W., Jaidyn's mother. We granted Wayne's petition for further review primarily to consider inconsistencies in decisions of this court and the Court of Appeals regarding the effect of a trial court's failure to appoint a guardian ad litem for a person whose parental rights are sought to be terminated under Neb. Rev. Stat. § 43-292(5) (Cum. Supp. 2012).

## BACKGROUND

The published opinion of the Court of Appeals sets forth the facts of this case in considerable detail.[1] We summarize only those facts necessary for our further review of that court's decision.

Jacqueline met Wayne in California in 2001 or 2002. A daughter, Jaidyn, was born to the couple in 2006. Later that year, Jacqueline left Wayne and moved to Nebraska, taking Jaidyn with her.

On September 27, 2011, Wayne filed a "Complaint to Acknowledge Paternity and Establish Custody and Parenting Time" in the district court for Seward County. Jacqueline filed an answer in which she admitted that Wayne was Jaidyn's biological father but denied that he was a fit parent. On February 24, 2012, Jacqueline filed a petition for termination of parental rights under Neb. Rev. Stat. § 42-364(5) (Cum. Supp. 2012). Three days later, Jacqueline filed an amended petition which alleged that termination of Wayne's parental rights was in Jaidyn's best interests and that § 43-292(1), (2), (4), (5), and (9) were grounds for termination. The case was transferred to the Seward County Court, and a trial was held

---

[1] *Wayne G. v. Jacqueline W.*, 21 Neb. App. 551, 842 N.W.2d 125 (2013).

on September 10 and October 1. The county court appointed a guardian ad litem for Jaidyn, but not for Wayne.

A number of witnesses—including Jacqueline, her adult daughter, and Wayne's adult daughter—testified that Wayne has a history of abusive behavior. There was testimony that Wayne had struck his ex-wife, Jacqueline, and a number of minor children who had lived in his house. Witnesses testified that Wayne had made numerous threats to the lives and physical well-being of persons in a domestic relation to him. There was also testimony that Wayne has a 25-year history of crack cocaine use.

Wayne admitted to having a substantial criminal record. His convictions include, but are not limited to, grand larceny, grand theft, forgery, inflicting corporal injury on a spouse/cohabitant (multiple convictions), criminal contempt, petty theft, disobeying a court order (multiple convictions), possession of a controlled substance/paraphernalia (multiple convictions), false imprisonment, and threaten crime with intent to terrorize. Wayne also admitted that his parental rights to one of his other daughters had been terminated.

Evidence of Wayne's mental illness was adduced. Wayne admitted that he has been diagnosed with adult attention deficit hyperactivity disorder, posttraumatic stress disorder, and depression. Testimony was heard from Wayne and other witnesses as to the diagnosis and treatment of his mental illness.

Wayne acknowledged that he had a checkered past, but testified that he had turned his life around in the last 3 years and was ready to have a greater role in Jaidyn's life. Wayne testified that he was now "properly medicated" and had not consumed crack cocaine within the previous 2 years. His girlfriend of nearly 1 year testified that Wayne had been appropriately interacting with her adult son and several of her minor nephews.

Jacqueline remarried in June 2012, and she testified that her husband had a good relationship with Jaidyn. Her husband testified that Jaidyn sometimes called him "daddy" and that he intended to adopt her if Wayne's parental rights were terminated.

On October 3, 2012, the Seward County Court entered an order terminating Wayne's parental rights to Jaidyn. The court concluded that termination was in Jaidyn's best interests and, identifying subsections (2), (4), (5), and (9) as the "relevant portion[s]" of § 43-292, found that "one or more grounds exist in support of termination of parental rights."

Wayne appealed the termination of his parental rights to the Court of Appeals. His brief assigned as error the county court's findings that (1) one of the grounds in § 43-292 existed and (2) termination was in Jaidyn's best interests. Wayne did not assign as error the county court's failure to appoint him a guardian ad litem, although he did argue that such appointment was mandatory and that the failure was plain error requiring reversal.

The Court of Appeals affirmed, finding that the evidence established grounds for termination under § 43-292(2), that Wayne was unfit to parent Jaidyn, and that termination was in Jaidyn's best interests.[2] Because the court concluded that grounds for termination existed under § 43-292(2), it declined to review Wayne's assignment of error as to the other subsections of § 43-292.[3] The Court of Appeals did not address the county court's failure to appoint a guardian ad litem for Wayne.

## ASSIGNMENTS OF ERROR

In his petition for further review, Wayne assigns, renumbered, that the Court of Appeals erred by (1) not addressing the county court's failure to appoint a guardian ad litem and (2) finding the evidence sufficient to terminate his parental rights under § 43-292(2).

## STANDARD OF REVIEW

[1] Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's

---

[2] *Id.*

[3] *Id.*

findings.[4] However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[5]

## ANALYSIS

### Guardian Ad Litem

[2] Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests.[6] Jacqueline alleged and the county court found the following grounds for termination stated in § 43-292:

> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile;
>
> (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period;
>
> . . . .
>
> (9) The parent of the juvenile has subjected the juvenile or another minor child to aggravated circumstances, including, but not limited to, abandonment, torture, chronic abuse, or sexual abuse.

---

[4] *In re Interest of Rylee S.*, 285 Neb. 774, 829 N.W.2d 445 (2013).

[5] *Id.*

[6] *In re Interest of Destiny A. et al.*, 274 Neb. 713, 742 N.W.2d 758 (2007); *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005).

The Nebraska Juvenile Code provides, at Neb. Rev. Stat. § 43-292.01 (Reissue 2008):

> When termination of the parent-juvenile relationship is sought under subdivision (5) of section 43-292, the court shall appoint a guardian ad litem for the alleged incompetent parent. The court may, in any other case, appoint a guardian ad litem, as deemed necessary or desirable, for any party. The guardian ad litem shall be paid a reasonable fee set by the court and paid from the general fund of the county.

It is only when termination is sought under § 43-292(5) that a court is required to appoint a guardian ad litem for the parent. Here, we are presented with the following question: When termination of parental rights is sought on multiple grounds, including § 43-292(5), and an appellate court finds that at least one ground other than § 43-292(5) is established by clear and convincing evidence and that termination is in the best interests of the child, is the failure of the trial court to appoint a guardian ad litem for the parent pursuant to § 43-292.01 plain error requiring reversal?

The starting point in our analysis is this court's decision in *In re Interest of M.M., C.M, and D.M.*[7] In that case, § 43-292(5) was the sole statutory ground for termination of a mother's parental rights, and the trial court did not appoint a guardian ad litem for the mother. We reasoned that even though the mother was at all times represented by appointed counsel, the appointment of a guardian ad litem was "mandatory" and the failure to make the appointment was "plain error which requires that the judgments be reversed."[8] Two justices dissented, reasoning the error was not prejudicial to the mother and thus did not warrant reversal.[9]

Later, in *In re Interest of Presten O.*,[10] the Court of Appeals applied the holding in *In re Interest of M.M., C.M.,*

---

[7] *In re Interest of M.M., C.M., and D.M.*, 230 Neb. 388, 431 N.W.2d 611 (1988).

[8] *Id.* at 390, 431 N.W.2d at 613.

[9] *Id.* (Boslaugh, J., dissenting; Hastings, C.J., joins).

[10] *In re Interest of Presten O.*, 18 Neb. App. 259, 778 N.W.2d 759 (2010).

*and D.M.* where multiple statutory grounds for termination, including § 43-292(5), were alleged and found, but the trial court failed to appoint a guardian ad litem for the parent. The court concluded that because the State sought termination "based, in part, on . . . § 43-292(5),"[11] appointment of a guardian ad litem was mandatory and the failure to make the appointment was plain error requiring reversal. A concurring opinion stated that "there are circumstances, such as those present in this case, where a parent is not prejudiced by the failure to appoint a guardian ad litem," noting that the parent was clearly competent and "fully capable of understanding the legal proceedings and the ultimate implication of those proceedings."[12] However, the concurring judge reasoned that under the principle of vertical stare decisis, he was required by *In re Interest of M.M., C.M., and D.M.* to concur in the judgment.

The Court of Appeals' disposition of the instant case is inconsistent with *In re Interest of Presten O.* Here, as in *In re Interest of Presten O.*, termination was sought in part on § 43-292(5) and no guardian ad litem was appointed for the parent. But the Court of Appeals did not find plain error as it did in *In re Interest of Presten O.* And there is tension between *In re Interest of Presten O.* and the long-established principle that if an appellate court determines that the lower court correctly found termination of parental rights to be appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence under any other statutory ground.[13]

We have also addressed the different but related issue of the effect of not alleging § 43-292(5) as a ground for termination when there is a question about the parent's mental health. In *In re Interest of J.N.V.*,[14] a mother was diagnosed with

---

[11] *Id.* at 263, 778 N.W.2d at 762.

[12] *Id.* at 265, 778 N.W.2d at 763 (Irwin, Judge, concurring).

[13] See, e.g., *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006).

[14] *In re Interest of J.N.V.*, 224 Neb. 108, 395 N.W.2d 758 (1986).

significant mental illness but the State sought and obtained termination of her parental rights solely on the basis of neglect under § 43-292(2). This court affirmed the termination, concluding that "[w]hile it might have been kinder in these sad and unfortunate circumstances for the State to have proceeded under § 43-292(5), it was not required to do so."[15] Three justices dissented, reasoning that this disposition "ignore[d] a statutory requirement and deprive[d] a mentally ill mother of the valuable right to have her interests protected by a guardian ad litem."[16]

This issue arose again in *In re Interest of Michael B. et al.*,[17] a case in which the State sought termination under § 43-292(2), (4), (6), and (7), but nevertheless introduced evidence that the mother had a mental deficiency that prevented her from reuniting with and caring for her children. On appeal, the mother urged us to adopt the view of the dissent in *In re Interest of J.N.V.* We declined to do so, reasoning that the only action which a guardian ad litem could have taken to benefit the mother would have been to retain experts to rebut the State's evidence of her mental deficiency. We concluded that because mental deficiency was not a ground for termination, any such rebuttal would not have altered the outcome of the case. But we also concluded that it was improper for the State to adduce evidence of the mother's mental deficiency where it had not asserted § 43-292(5) as a ground for termination. However, we affirmed the judgment upon finding that there was clear and convincing evidence "independent of any mental deficiency" that the grounds for termination stated in § 43-292(4) existed.[18]

[3] An appellate court may, at its option, notice plain error.[19] In cases decided after *In re Interest of M.M., C.M., and D.M.*,[20]

---

[15] *Id*. at 112, 395 N.W.2d at 761.

[16] *Id*. at 114, 395 N.W.2d at 762 (Caporale, J., dissenting; Krivosha, C.J., and Shanahan, J., join).

[17] *In re Interest of Michael B. et al.*, 258 Neb. 545, 604 N.W.2d 405 (2000).

[18] *Id*. at 557, 604 N.W.2d at 413.

[19] *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011).

[20] *In re Interest of M.M., C.M., and D.M., supra* note 7.

we have clarified that plain error must be not only plainly evident from the record but also of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, or fairness of the judicial process.[21] Thus, an error, no matter how apparent from the record, cannot be "plain error" if it does not meet the requisite threshold of prejudice. Where § 43-292(5) is one of multiple statutory grounds alleged to support termination of parental rights, the failure of the trial court to appoint a guardian ad litem for the parent may or may not be prejudicial, depending upon the specific facts of the case.

[4] Of course, trial courts should comply with the statutory directive of § 43-292.01 and appoint a guardian ad litem for a parent whenever § 43-292(5) is alleged as a basis for terminating parental rights. And counsel should assist the court by making a timely request for such appointment. But we decline to extend the holding of *In re Interest of M.M., C.M., and D.M.* to a case where there are grounds for termination other than or in addition to § 43-292(5). We hold that when termination of parental rights is sought on multiple grounds, including § 43-292(5), and an appellate court finds that at least one ground other than § 43-292(5) is established by clear and convincing evidence and that termination is in the best interests of the child, the failure of the trial court to appoint a guardian ad litem for the parent pursuant to § 43-292.01 is error, but not plain error requiring automatic reversal. In that circumstance, the failure to appoint a guardian ad litem will generally not require reversal unless it is assigned as error on appeal and shown to have been prejudicial to the parent. In such cases, if the record establishes that another statutory ground for termination exists, independent of any mental deficiency of the parent, the failure to appoint a guardian ad litem may be harmless error. Here, we need not engage in a harmless error analysis, because the doctrine of plain error does not apply and the failure of the county court to appoint a guardian ad litem was not assigned as error on appeal. To the extent that *In re Interest*

---

[21] *Cesar C. v. Alicia L., supra* note 19; *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011).

*of Presten O.*[22] is inconsistent with our holding in this case, it is disapproved.

### EVIDENCE OF NEGLECT

In its de novo review of the record, the Court of Appeals determined that there was sufficient evidence to support termination under § 43-292(2), i.e., that Wayne had "substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection." Without repeating the Court of Appeals' detailed summary of the evidence, we agree that it was sufficient to support the court's determination.

### CONCLUSION

For the reasons discussed, we affirm the judgment of the Court of Appeals which affirmed the judgment of the county court for Seward County.

AFFIRMED.

---

[22] *In re Interest of Presten O., supra* note 10.

CASSEL, J., dissenting.

The majority concedes that failure to appoint a guardian ad litem (GAL) results in plain error requiring reversal[1] where a termination of parental rights is sought based on the ground of a parent's mental illness or mental deficiency.[2] But the majority effectively holds that even where a termination is sought and actually adjudicated on a parent's mental illness or mental deficiency, the mere presence of other grounds eliminates the plain error arising from the failure to appoint a GAL. And further, the majority suggests that even if the failure to appoint a GAL in a termination sought upon the ground of mental illness or deficiency was properly assigned as error, it may not be reversible despite the clear statutory mandate. I respectfully disagree.

---

[1] See *In re Interest of M.M., C.M., and D.M.*, 230 Neb. 388, 431 N.W.2d 611 (1988).

[2] See Neb. Rev. Stat. § 43-292(5) (Cum. Supp. 2012).

The statute[3] imposes a mandatory duty to appoint a GAL where termination is sought on the basis of the parent's mental illness or deficiency. A termination under § 43-292(5) applies where a parent is "unable to discharge parental responsibilities because of mental illness or mental deficiency" and the condition is expected to continue for a "prolonged indeterminate period." "When termination of the parent-juvenile relationship *is sought under subdivision (5)* of section 43-292, the court *shall* appoint a [GAL] for the alleged incompetent parent."[4] As a general rule, the use of the word "shall" is considered to indicate a mandatory directive, inconsistent with the idea of discretion.[5] And, as the majority concedes, this court has previously held that the appointment was "mandatory" and that the failure to appoint a GAL was plain error.[6]

The Legislature's purpose in mandating such appointments seems abundantly clear—to dispel any taint upon the termination of a mentally ill parent's rights arising from the very nature of the parent's condition. A parent's right to raise his or her child is constitutionally protected.[7] This court has frequently noted the constitutional protection accorded to the relationship between parent and child.[8] The U.S. Supreme Court has repeatedly recognized this protected status.[9] The Legislature is presumed to know the general condition surrounding the subject matter of the legislative enactment, and it is presumed to know and contemplate the legal effect that accompanies the language it employs to make effective the

---

[3] Neb. Rev. Stat. § 43-292.01 (Reissue 2008).

[4] § 43-292.01 (emphasis supplied).

[5] *Drummond v. State Farm Mut. Auto. Ins. Co.*, 280 Neb. 258, 785 N.W.2d 829 (2010).

[6] *In re Interest of M.M., C.M., and D.M., supra* note 1.

[7] *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[8] See, e.g., *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992).

[9] See, *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *M. L. B. v. S. L. J.*, 519 U.S. 102, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996); *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978).

legislation.[10] Thus, in enacting § 43-292.01, the Legislature presumably understood the constitutional significance of the parent-child relationship. Similarly, in determining the meaning of a statute, the applicable rule is that when the Legislature enacts a law affecting an area which is already the subject of other statutes, it is presumed that the Legislature did so with full knowledge of the preexisting legislation and the decisions of the Nebraska Supreme Court construing and applying that legislation.[11] Thus, when the Legislature enacted this requirement in 1998,[12] it did so with a full appreciation of the constitutional protection afforded to the parent's rights.

The situation in *In re Interest of Presten O*.[13] was materially different. In that case, the biological mother was ordered to submit to a competency evaluation, which revealed that she was competent to understand the legal proceedings. It was in that context that the concurring judge stated, "[T]here [was] no indication that [the mother] would have benefited in any way by the appointment of a [GAL]."[14] Here, there is no indication in the record of any competency evaluation. The majority notes that testimony was heard from the father and other witnesses regarding the diagnosis and treatment of his mental illness. But the majority does not identify any testimony or other evidence in the instant case bearing on the father's competency in the termination proceeding.

But, more important, neither the majority nor the concurring judge in *In re Interest of Presten O*. explains why the presence of other grounds for termination eliminates or detracts from the Legislature's purpose in mandating appointment of a GAL for a parent where termination is sought under § 43-292(5). The Legislature focused on the parent's mental illness or deficiency. It implemented a prophylactic remedy. The language

---

[10] *State ex rel. Wagner v. Gilbane Bldg. Co.*, 276 Neb. 686, 757 N.W.2d 194 (2008).

[11] *White v. State*, 248 Neb. 977, 540 N.W.2d 354 (1995).

[12] See 1998 Neb. Laws, L.B. 1041.

[13] *In re Interest of Presten O*., 18 Neb. App. 259, 778 N.W.2d 759 (2010).

[14] *Id*. at 265, 778 N.W.2d at 763 (Irwin, Judge, concurring).

of the statute is clear. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.[15] The majority does not explain why proof of other grounds at the conclusion of the evidence excuses the failure to adhere to the statutory mandate at the commencement of the proceeding. The existence of other grounds for termination does not relate in any logical way to the impact of mental illness or mental deficiency upon the parent's ability to understand and fully participate in the proceedings. The majority introduces doubt and uncertainty into a very precise statutory requirement. I would not do so.

And in the face of the clear statutory mandate, I would not invent an element of discretion, even if a competency evaluation had been conducted and presented. Had the Legislature intended to allow a court to waive the requirement where it was satisfied of the parent's capacity to understand and participate in the proceedings, it certainly could have done so. But it did not. The Legislature declined to provide any such authority to the trial court, which would be in the best position to consider evidence regarding the parent's capacity and to exercise discretion. This court, in contrast, reviews only the cold record. Where the Legislature did not provide such discretion to the trial court, I cannot believe it intended this court to make such determinations from the bare record presented on appeal.

The majority also relies on two other decisions, but neither decision detracts from the clear mandate of the statute where termination is sought under § 43-292(5). In one case, this court acknowledged that the party seeking termination was not required to invoke subsection (5) even though there may have been evidence to support it.[16] In the other case, where termination was not sought under subsection (5) but the State adduced evidence of a parent's mental deficiency, this court upheld the termination.[17] This court determined that the

---

[15] *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013).

[16] See *In re Interest of J.N.V.*, 224 Neb. 108, 395 N.W.2d 758 (1986).

[17] See *In re Interest of Michael B. et al.*, 258 Neb. 545, 604 N.W.2d 405 (2000).

evidence of mental deficiency should not have been received, but found that there was clear and convincing evidence supporting termination under subsection (4)[18] "independent of any mental deficiency."[19] In both cases, the party seeking termination did *not* invoke subsection (5). And where subsection (5) is not invoked, it is clear that the appointment of a GAL is discretionary.[20] The majority may have a good argument to be addressed to the Legislature to widen the mandate of § 43-292.01, but it does not logically follow that these cases support ignoring the mandate where subsection (5) *is* invoked and, indeed, is *adjudicated*. When the Legislature seeks to inaugurate reforms in the area of economics or social welfare, it need not choose between attacking every aspect of the problem and not attacking the problem at all.[21] In § 43-292.01, the Legislature imposed a specific procedural device where termination is "sought under subdivision (5)" of § 43-292. Neither case cited by the majority provides a good reason for ignoring this concededly "mandatory" requirement.[22]

The party initiating a termination proceeding has a choice whether to invoke the ground of a parent's mental illness or mental deficiency. Here, the other parent chose to do so. Moreover, the trial court ultimately found clear and convincing evidence of the existence of such mental illness or deficiency. Having placed this issue in controversy, the initiating parent should have ensured that the statutory mandate was carried out. I would not excuse her failure to do so.

Because termination was "sought" under § 43-292(5), both the plain language of the statute and this court's precedent

---

[18] § 43-292(4) (parents unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior).

[19] *In re Interest of Michael B. et al., supra* note 17, 258 Neb. at 557, 604 N.W.2d at 413.

[20] See § 43-292.01 ("court may, in any other case, appoint a [GAL], as deemed necessary or desirable, for any party").

[21] *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000).

[22] See *In re Interest of M.M., C.M., and D.M., supra* note 1.

dictate that appointment of a GAL was "mandatory" and that the county court's failure to make the appointment was plain error.[23] Unless the court is prepared to overrule this precedent, it should be followed. I respectfully dissent from the majority's failure to do so.

Miller-Lerman, J., joins in this dissent.

---

[23] See *id.*

---

Martin V. Linscott, individually and on behalf of
Shasteen, Linscott & Brock, P.C., a Nebraska
professional corporation, appellant,
v. Rolf Edward Shasteen and
Tony J. Brock, appellees.

___ N.W.2d ___

Filed June 6, 2014.    No. S-13-597.

1. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.

2. **Contracts: Parties: Intent.** To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.

3. **Contracts: Parties.** A binding mutual understanding or meeting of the minds sufficient to establish a contract requires no precise formality or express utterance from the parties about the details of the proposed agreement; it may be implied from the parties' conduct and the surrounding circumstances.

4. **Contracts: Parties: Intent.** An implied contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract.

5. **Contracts: Proof.** Evidence of facts and circumstances, together with the words of the parties used at the time, from which reasonable persons in conducting the ordinary affairs of business, but with special reference to the particular matter on hand, would be justified in inferring such a contract or promise, is sufficient.

6. **Contracts: Parties: Intent.** The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction.

7. **Contracts: Intent.** If the parties' conduct is sufficient to show an implied contract, it is just as enforceable as an express contract.